[S. F. No. 3591.    Department One.—May 25, 1904.]

## D. A. CURTIN, Respondent, v. J. W. INGLE, Appellant.

DELIVERY OF BAGS FOR SHIPMENT OF GRAIN—CONTRACT TO RETURN OR PAY FOR UNUSED BAGS—TIME NOT OF ESSENCE—DEMAND.—Under a contract to deliver bags for the shipment of grain to the owners during a certain season, and to pay for those not shipped or accounted for by a specified date, where it appears that shipments were expected and made after that date, the time fixed was not of the essence of the contract, and where the bags were returned to the agent of the owners with whom the contract was made at the close of shipments, the owners or their assignee cannot recover any pay for the bags so returned, in the absence of a demand for their return to the owners directly or for an accounting thereof to them.

ID.—INFORMATION TO OWNERS.—Upon the theory that it was necessary to account to the owners directly, information given them of the whereabouts of the bags, not far from the date fixed to account or pay for the bags, was a sufficient accounting to them in the absence of a demand to deliver the bags to them at the place where they were stored.

ID.—COMPLAINT AND FINDINGS NOT SUSTAINED—OMISSION TO FIND.— Where the complaint and findings proceeded upon the improper theory that the defendant was absolutely liable to pay for all bags not shipped with grain by the date fixed, the contract proved does not sustain the allegations, and is inconsistent with the findings; and where the findings omitted to show whether any bags were unaccounted for at that time, and omitted an important condition of the contract relied upon, a judgment for the plaintiff must be reversed.

ID.—ACCOUNT STATED—PLEADING—EVIDENCE OF ADMISSION—REBUTTAL. —Where the complaint was not based upon an account stated, a statement of the account can have no greater effect than as evidence of an admission, and its effect as such evidence is overcome when the defendant had declared beforehand to them that he had to deal not with the owners of the bags, but with the party with whom he had contracted, with whom they must deal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion.

Waldemar J. Tuska, for Appellant.

Ingle was justified in dealing with Crosby as principal, under his contract with him. Moore, Ferguson & Co. could not adopt the portion of Crosby's action which was beneficial to them and repudiate the remainder of his action. (*Burke Land and Livestock Co.* v. *Wells, Fargo & Co.,* 7 Idaho, 42; *Citizens' State Bank* v. *Pence,* 59 Neb. 579.) The action is not upon an account stated. (*Auzerais* v. *Naglee,* 74 Cal. 63, 64.) The evidence shows a prior repudiation of the account with Moore, Ferguson & Co.

Cannon & Freeman, and W. B. Treadwell, for Respondent.

Moore, Ferguson & Co. were the principals in the contract, and letters written by Crosby could not prove his authority to receive the unused bags. (Code Civ. Proc., sec. 1870, subd. 5; *Smith* v. *Liverpool etc. Ins. Co.,* 107 Cal. 432, 437.) The account rendered became an account stated, and was *prima facie* evidence of its correctness. (*Mayberry* v. *Cook,* 121 Cal. 588, 590; *Auzerais* v. *Naglee,* 74 Cal. 60, 63-64; *Sayward* v. *Dexter,* 72 Fed. 758, 769-770; 1 Am. & Eng. Ency. of Law, pp. 448, 458.)

GRAY, C.—This action was brought to recover $806.33 for bags, $80,64 for twine delivered to defendant, and for $34.30 for money paid, and received by defendant. The trial was had without a jury, and the findings and judgment were for plaintiff for the several amounts claimed and interest. Defendant appeals from the judgment and from an order denying him a new trial.

The plaintiff sues as assignee of Moore, Ferguson & Co., a firm of grain dealers, doing business in San Francisco, which firm will be hereinafter referred to as the plaintiffs. The defendant was a merchant doing business at Philomath, Oregon.

As to the empty bags involved in the case, the plaintiffs rely upon a contract in writing signed by defendant as follows:—

"PHILOMATH, OREGON, Sept. 1st, 1893.

"Received from W. F. Crosby 14,500 bags at Philomath warehouse for the purpose of shipping grain. Said bags are

the property of Moore, Ferguson & Co., San Francisco, and are to be shipped to them filled with grain during the season 1893-4, according to the terms of a certain warehouse agreement entered into with W. F. Crosby on July 28th, 1893, all bags not shipped or unaccounted for at the expiration of this agreement May 31st 1894, I hereby agree to pay for at the market price at time of delivery seven (7) cents each.

                                        "J. W. INGLE."

The contract referred to in the foregoing receipt is as follows:—

"This agreement entered into between W. F. Crosby of Albany, Oregon, party of the first part, and J. W. Ingle, of Philomath, Oregon, party of the second part, this 28th day of July, 1893, for the purpose of operating the grain warehouses and elevators situated on the line of the Oregon Pacific Railroad in Benton County, Oregon, at Philomath and Wren stations, upon the following conditions, to wit: The party of the first part agrees to furnish the party of the second part with bags and twine for receipt and shipment of all grain passing through said houses; and assist the party of the second part in paying for service of his employees by making small advances upon the salaries due them, said advances to be deducted from payments due said party of the second part as hereinafter mentioned; the said party of the second part agrees to operate said warehouses at his own expense, receive, clean, store, sack, and ship grain to the order of the party of the first part, make purchases from farmers for the said party of the first part at a cost to the party of the first part of two and one-half cents per bushel; said payment to be made by the party of the first part to the party of the second part upon shipment of said grain less amount of said advances to employees. The bags furnished by the party of the first part shall be accounted for by the party of the second part as the property of said party of the first part, and at the expiration of this agreement, on May 31st, 1894, all bags not accounted for, the party of the second part agrees to pay to the party of the first part the market price of bags so unaccounted for at the market price at the time of delivery. The party of the first part agrees to buy the grain stored in said warehouses at the regular market price; said market price to be determined and regulated by the price of said grain in San Francisco,

less expense of handling. Should the party of the first part at any time fail to pay such market price, then the party of the second part has the right to sell to others, provided he can realize such market price. In case of the sale to others, as above described, the party of the second part shall pay to the party of the first part a rental of one cent per bushel on all grain so sold, and at the rate of four cents per bushel on bags and twine; said payment to be made before the shipment of such grain to other parties. The said party of the second part is hereby allowed to add choppers to said houses, at his own expense, for his own free use, and shall be allowed to handle other product than grain without charge.

"Witness our signatures the 28th day of July, 1893.

"Signed.    W. F. CROSBY,
"J. W. INGLE."

The finding with reference to the contract upon which the suit is based follows the allegation of the complaint and reads as follows:—

"On the first day of September, 1893, the copartnership firm of Moore, Ferguson & Co. delivered to the defendant fourteen thousand five hundred (14,500) grain bags for the purpose of shipping grain, and said defendant then and there agreed in writing to ship to said Moore, Ferguson & Co. the said bags filled with grain during the season of 1893-4, and by said writing further agreed to pay at the rate of seven (7) cents each, for whatever number of said bags should not, prior to the 31st day of May, 1894, have been so shipped filled with grain or otherwise to the said Moore, Ferguson & Co., or not by him, prior to that time delivered to said Moore, Ferguson & Co."

There was no finding as to whether the bags in question had been accounted for by defendant, nor is there any allegation in the complaint as to the want of an accounting for these empty bags. On the contrary, the complaint and findings both proceed upon the theory that the liability of defendant to pay for the bags became absolute as to any bags not shipped to San Francisco "filled with grain" or otherwise prior to May 31, 1894. This is not a proper interpretation of the contract. It was only such bags as should be unaccounted for on the last-mentioned date that defendant agreed to pay for. This date was not of the essence of the contract, nor was it stipulated in

the receipt or elsewhere that the defendant should account directly to plaintiffs for these bags. There is no evidence in the record even tending to show that it was ever agreed that any of these bags should be returned empty by defendant to plaintiffs at San Francisco. The contract left it optional with defendant to use and pay for any of these bags that he did not ship filled with grain to the plaintiffs at San Francisco; or to account for any and all of the unused bags. The evidence shows without conflict that the defendant did account to Crosby for the bags, and it appears from the undisputed evidence that the defendant was warranted in reaching the conclusion that such was his duty. He had been told in two letters from plaintiffs that he was dealing in reference to these same bags with Crosby, and not with plaintiffs, and also told that he must continue to deal with Crosby. When this case was here on a former appeal it appeared that much of this evidence had been excluded at the first trial, and, referring to it, the court said: "The excluded evidence tended to show that the defendant was justified in treating Crosby as the agent of Moore, Ferguson & Co., in the premises and in dealing with him as he did." (*Curtin* v. *Ingle*, 137 Cal. 95.) In the same case the court also said, speaking of the agreement between Ingle and Crosby: "The defendant therefore had the right to have that agreement considered in connection with said receipt as they form parts of the same transaction between Crosby and defendant." The receipt made no change in the previous contract or arrangement with Crosby, except to recite that the bags were the "property of Moore, Ferguson & Co.," to provide that the bags should be shipped to plaintiffs filled with grain, and to fix the price of bags unaccounted for at seven cents. If there had been any purpose to change the previous arrangement and contract to account to Crosby for the unused bags, as this contract had previously been repeatedly impressed on the mind of the defendant by the letters of the plaintiffs, such change could have easily been provided for in the receipt of September 1, 1893, by saying therein that the unused bags should be paid for, accounted for, or be delivered to plaintiffs at San Francisco or in Oregon, as the parties may have desired. The plaintiffs place an interpretation on the contract that. it will not bear, and undertake by this suit to force defendant to pay for all these

unused bags without giving him the benefit of the option to account for them which he had by the express terms of the contract. That this date, mentioned in the receipt of May 31, 1894, was not considered of the essence of the contract by the plaintiffs themselves, appears from their letter written long afterwards, on May 31, 1895, in which they say: ''Were in hopes that you would be able to do something in the grain line, especially oats, so as to have enabled you to use the bags in that way, but have not been advised that you have done anything in the oat line.'' From this it seems that plaintiffs had been waiting until this date in 1895 without demanding either an accounting or pay for the bags, in the hope that the bags might yet be shipped to them filled with grain. And even in this last letter they do not ask for an accounting as to the bags, nor do they demand the delivery of the bags. But they do, however, inclose a statement of account with this letter, in which $806.33 is charged to defendant on account of these bags, and request him to pay the same, as this is ''getting to be an old matter.''

As further evidence that the thirty-first day of May, 1894, was not intended as an absolute limit of defendant's time to account for the unused bags, we have the fact disclosed by the plaintiffs' books that Ingle continued to ship the bags filled with grain after that date. Between July 31 and December 31, 1894, plaintiffs received from Ingle 2,631 of the bags mentioned in the receipt, filled with grain. And during all those months there is no demand from plaintiffs for an accounting or payment for unused bags. The plaintiffs were then resting on the hope that defendant might yet be able to return to them all the bags filled with grain.

In view of all this evidence it is not fair to say that defendant's retention of the bags after the date fixed by the contract amounted to an election by him to purchase them. Of course, these second-hand bags, as most of them are shown to be, will not be worth very much after the expense of shipping them empty back to San Francisco is paid. And they are probably not worth seven cents apiece in Oregon. Therefore, it becomes important to consider and construe the various contracts, receipts, and letters between the parties properly. If there was uncertainty (as there seems to have been) in regard to the liability of the parties, the plaintiffs were at

least as much responsible for that uncertainty as the defendant, and it behooved them in that condition of affairs to put the defendant clearly in default, so that they could maintain the burden upon them to show that he had broken his contract. They should not have ignored that part of the contract which looked to an accounting for or return of these unused bags in Oregon, but should have made some demand, either directly for the accounting or embracing that in the alternative. We think the undisputed evidence as disclosed by the record warrants the legal conclusion that plaintiffs are not entitled to recover for these empty bags.

Aside from the foregoing, the judgment must be reversed and a new trial had for another reason. Without objection the defendant testified as follows: "I informed Moore, Ferguson & Co. about the unused bags, where they were; that was about June or July, 1894. I wrote them in substance this: That the grain season for harvesting was now approaching, and that they had better make some disposition of the bags, that they could now use them and save themselves, but if they intended to hold me for them on a cash basis they would get left, and I think I said too that they understood fully that I was to return all sacks empty and to be held responsible for them." It was subsequently denied by a witness on behalf of plaintiffs that the firm had ever received any such letter from defendant. Even if we admit that the contract and understanding was that defendant should account directly to plaintiffs for the bags, here is evidence tending to show that he did in fact so account. He says he told them where the bags were; and that he did this at just about the date that he had agreed to either account or pay for the bags. This was all that was necessary for him to do in the way of accounting, except perhaps on demand to deliver the bags at the place where, as he further testified, they were stored; and, as we have seen, no such demand was ever made.

The reception of this evidence without objection shows that it was treated by all parties as a matter in issue before the court. And, indeed, from plaintiffs' construction of the contract, that the accounting for the bags should have been directly to them, it was a matter of the utmost importance for them to establish, and for the court to find, that there had been no accounting to them for the bags. And yet there

is no finding at all on this subject. There is no finding that there were any bags unaccounted for to plaintiffs. Defendant agreed to pay for such bags only as were not shipped or were unaccounted for. In view of the foregoing evidence no judgment could properly be entered upon this contract without some disposition in the findings of this most important condition of defendant's liability under his contract.

As the record stands, the contract does not sustain the allegations of the complaint. The evidence also fails to support the findings quoted above for the reason that an important condition of the written contract relied on is omitted from the finding as to what the contract was.

Further, there is no finding at all as to whether there were any bags unaccounted for at the time.

Respondent contends that the statement of account forwarded to defendant May 31, 1895, and to which no reply was subsequently made by defendant, amounted to an account stated, and was sufficient to support the findings as to defendant's liability for the price of the bags. It is admitted, however, that this suit is not based on an account stated. The statement of account, therefore, and failure to reply to it, can only be looked to as evidence in the nature of an admission on the part of defendant. If defendant had replied to the letter containing the statement, denying all liability to pay the claim, of course the statement would have amounted to nothing as evidence. And we think the same rule should apply where the defendant declares in advance that he does not intend to acquiesce in the statements of plaintiffs when he fails to reply to them.

On December 28, 1893, plaintiffs had written to defendant, saying that ''any bags not shipped to us with grain by the close of the season we will expect you to pay for as per terms of your receipt sent us.'' Defendant replied to this letter on January 1, 1894, as follows: ''Your two letters of recent date to hand and contents noted. I am somewhat surprised at the way you talk now. In the beginning you ignored me altogether and expressed surprise that I should be trying to deal with two parties at the same time. It seems to me that you would now take your own medicine and deal with Mr. Crosby alone. I want to state now that I am not dealing with you, but Mr. Crosby, and that if you have any such

contract with him about bags you must look to him to fulfill it, for I have no such arrangement. My contract with him speaks for itself, and you need not suppose for a moment that you can make suggestions to me by mail, and because I do not see fit to answer, that I therefore acquiesce. Please bear in mind that I am dealing with Mr. Crosby.'' This letter, as it seems to us, ought to destroy the force of any inference that in its absence might be drawn from his subsequent failure to answer plaintiffs' letters. Certainly this letter contained an express repudiation of any intention on the part of defendant to ever admit that he was liable to pay plaintiffs for these unused bags or that he was dealing with plaintiffs at all concerning them.

The contract concerning the twine was between Crosby and defendant; and so far as this twine is concerned, there is nothing to show that plaintiffs were subsequently substituted for Crosby as a party to said contract. The twine is not even mentioned in the receipt. Therefore, the evidence failed to show that defendant purchased any twine from plaintiffs. The statement of account of May, 1895, cannot be treated as evidence as to purchase of twine, for the reasons already stated.

As to the item of $34.30 cash, it does appear from the evidence that plaintiffs rendered a statement of account directly to defendant on September 11, 1893, charging him with this item as a balance due plaintiffs on a certain transaction concerning a shipment of oats from defendant through Crosby. It seems that the defendant did not reply to this statement. This was some evidence of indebtedness as to this item, and it is sufficient to sustain the finding in regard to it. However, this does not support the judgment.

We advise that the judgment and order denying a new trial be reversed.

Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

Van Dyke, J., Shaw, J., Angellotti, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.